In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-2271 & 99-2397

United States of America,

Plaintiff-Appellee,

v.

Robert R. Krilich, Krilich Companies, Incorporated,
Riverwoods Development Corporation, et al.,

Defendants-Appellants.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 92 C 5354--William T. Hart, Judge.

Argued November 9, 1999--Decided April 12, 2000

Before Coffey, Manion, and Evans, Circuit Judges.

Manion, Circuit Judge.  The EPA civilly charged
Robert Krilich with illegally filling a wetland
on property he was developing in suburban
Chicago, Illinois. Krilich entered into a consent
decree with the EPA to settle the dispute, the
terms of which required him, among other things,
to create a substitute wetland by a specific
date, or pay a substantial penalty for any delay.
He failed to complete the new wetland by the
stated time, so the EPA moved to enforce the
terms of the consent decree. The district court
granted that motion and fined Krilich in excess
of $1.2 million. Krilich appealed from that
judgment and we affirmed (although the case was
remanded to correct an error in calculating the
penalty). Krilich then filed a Rule 60(b)(4)
motion to vacate the judgment as void. The
district court denied that motion and he again
appeals. We affirm.

I.

Factual and Legal Background
   To understand this appeal, we must return to
1992-- both factually and legally. In 1992, the
EPA charged Robert Krilich,/1 who was developing
the Royce Renaissance Property in Oakbrook
Terrace, Illinois, with violating section 301(a)
of the Clean Water Act by discharging fill into

"wetlands" without first obtaining a section 404 permit. Section 301(a) of the Clean Water Act prohibits "the discharge of any pollutant," except as otherwise authorized by the Clean Water Act. 33 U.S.C. sec. 1311. Section 404 of the Clean Water Act authorizes the Secretary to issue a permit approving "the discharge of fill material into the navigable waters."/2 33 U.S.C. sec. 1344. The Clean Water Act defines "navigable waters" as "waters of the United States," 33 U.S.C. sec. 1362(7), but does not further describe what is included as part of "waters of the United States." The Act may not cover all of the "water in the United States," but it comes close: The EPA and the Army Corps of Engineers have promulgated regulations defining "waters of the United States" to include "intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce." 33 C.F.R. sec. 328.3(a)(2); 40 C.F.R. sec. 230.3(s)(3)./3

Both the EPA and the Corps have long maintained that this regulatory definition of "waters of the United States" includes "all waters, including those otherwise unrelated to interstate commerce, 'which are or would be used as habitat by birds protected by Migratory Bird Treaties' or 'which are or would be used as habitat by other migratory birds which cross state lines.'" Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers, 191 F.3d 845, 848 (7th Cir. 1999) (quoting 51 Fed. Reg. 41,206, 42,217 (1986)). Based on its view that isolated intrastate waters were "waters of the United States" because of the actual or potential use by migratory birds, the EPA charged Krilich with violating section 301. However, at the time that the EPA first charged Krilich with violating section 301 in August 1992, the law of this circuit was more narrow. This court had just held that Congress did not have the power to regulate isolated intrastate waterways based simply on the supposition that migratory birds, while migrating to seasonal nesting areas, could potentially use the waters. Hoffman Homes, Inc. v. Administrator, United States EPA, 961 F.2d 1310, 1311 (7th Cir. 1992) (Hoffman I) (rejecting the EPA's claim of jurisdiction "over the intrastate wetland solely on the ground that migratory birds could, potentially, use the wetland as a place to feed, or nest or as a stopover on the way to the Gulf States for the Winter months"), vacated 975 F.2d 1554 (7th Cir. 1992). But this holding had a short life; it was vacated on September 4, 1992, before the birds had reason to migrate south. Hoffman Homes, 975 F.2d 1554.

After Hoffman I was vacated, Krilich entered into a consent decree with the EPA, this in spite of the fact that the EPA's charge asserted that he had violated section 301 by filling isolated intrastate wetlands./4 In the consent decree, Krilich agreed to pay a fine of $185,000, remediate some of the wetlands, and construct a 3.1-acre replacement wetland on the Royce Renaissance property to compensate for the wetlands that had already been filled. The consent decree included specific deadlines for the construction, and provided for monetary penalties for any delay.

As noted, the parties agreed to the consent decree after Hoffman I had been vacated for rehearing. On October 29, 1992, the district court entered final judgment pursuant to the terms of that consent decree, and that final judgment was entered before this court issued its decision on rehearing in Hoffman II.

After rehearing, on July 19, 1993, this court held in Hoffman II that the EPA lacked jurisdiction over the wetlands at issue in that case because the government had failed to present evidence that migratory birds actually used the wetlands as a habitat. Hoffman Homes, Inc. v. Administrator, United States EPA, 999 F.2d 256 (7th Cir. 1993) (Hoffman II). Because the government did not prove actual use by the birds, Hoffman II did not reach the issue of whether that would be a sufficient connection to interstate commerce to allow Congress to regulate isolated intrastate wetlands.

Throughout and following the proceedings in Hoffman I and II, Krilich went about his business constructing the Royce Renaissance Property. He failed, however, to complete the 3.1-acre mitigation pond by the date specified in the consent decree, so the United States moved to enforce the penalties contained in the decree. The district court imposed civil penalties against Krilich of $1,307,500. Krilich appealed from that judgment, arguing that the deadlines had been modified, that the doctrines of impossibility and frustration excused his non-performance, or that the government was equitably estopped from enforcing the penalty provisions. This court rejected those arguments and affirmed the assessment of penalties, but remanded the case to the district court to correct an error made in calculating the penalty, which the government had pointed out on appeal. United States v. Krilich, 126 F.3d 1035 (7th Cir. 1997).

On remand, Krilich decided to take a different tack--he moved pursuant to Rule 60(b)(4) to

vacate the district court's original judgment entered pursuant to the terms of the consent decree. Krilich argued that the district court lacked subject matter jurisdiction over the EPA's complaint, and therefore that its judgment was void. The district court rejected Krilich's argument, and denied his motion to vacate. Krilich once again appeals.

II.

Analysis

Rule 60(b)(4) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding . . . [if] the judgment is void . . . ." Fed. R.Civ.P. 60(b)(4). Krilich contends that the district court's judgment, which adopted the consent decree and the sanctions contained therein, was void because the court lacked subject matter jurisdiction over the EPA's case against him. Specifically, Krilich asserts that the land he allegedly filled was an "isolated intrastate wetland" which was beyond the federal government's commerce power to regulate. Because Congress lacked authority to regulate his property, Krilich contends that the district court lacked subject matter jurisdiction over the EPA's complaint. And even though he agreed to the terms of the consent decree, which included a provision that the wetlands filled were "waters of the United States," Krilich now argues that this does not change the result because you can never consent to subject matter jurisdiction, and lack of jurisdiction can be raised at any time.

In making this argument, however, Krilich confuses the meaning of "jurisdiction"--"a word of many, too many meanings" according to the Supreme Court. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 90 (1998). This court recently examined the problem. "Lawyers and judges sometimes refer to the interstate commerce element that appears in many federal crimes as the 'jurisdictional element,' but this is a colloquialism--or perhaps a demonstration that the word 'jurisdiction' has so many different uses that confusion ensues." Hugi v. United States, 164 F.3d 378, 381 (7th Cir. 1999) (citing Kanar v. United States, 118 F.3d 527, 529-30 (7th Cir. 1997)).

"[T]he nexus with interstate commerce, which courts frequently call the 'jurisdictional element,' is simply one of the essential elements of [the offense]. Although courts frequently call it the 'jurisdictional element' of the statute, it is 'jurisdictional' only in the shorthand

sense that without that nexus, there can be no federal crime . . . . It is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, . . ." Hugi, 164 F.3d at 381 (7th Cir. 1999). Thus, while "[a] link to interstate commerce may be essential to Congress's substantive authority, see United States v. Lopez, 514 U.S. 549, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995), . . . the existence of regulatory power differs from the subject-matter jurisdiction of the courts." Hugi, 164 F.3d at 380-81. The "subject matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. sec. 3231, and there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts. That's the beginning and the end of the 'jurisdictional' inquiry." Hugi, 164 F.3d at 381 (quoting United States v. Martin, 147 F.3d 529 (7th Cir. 1998)). And "once a defendant pleads guilty in a court which has jurisdiction of the subject matter and of the defendant, as did the court in the instant case, the court's judgment cannot be assailed on grounds that the government has not met its burden of proving 'so-called jurisdictional facts.'" Hugi, 164 F.3d at 381 (internal quotations omitted). "Even if the government fails to establish the connection to interstate commerce, the district court is not deprived of jurisdiction to hear the case." Hugi 164 F.3d at 381 (quoting Martin, 147 F.3d at 532).

While Krilich attempts to distinguish Hugi and Martin as criminal in nature and not civil, he fails to explain why that makes any difference. It does not. In this case, the interstate connection, i.e. that the waters involved were "waters of the United States," is merely an element of the United States' Clean Water Act case under section 301; subject matter jurisdiction over this question involving federal law comes from 28 U.S.C. sec. 1331. On appeal, Krilich argues at great length that his wetlands cannot constitutionally satisfy the "waters of the United States" element. But "[j]urisdiction under the federal question statute is not defeated by the possibility that the averments, upon close examination, might be determined not to state a cause of action." Turner/Ozanne v. Hyman/ Power, 111 F.3d 1312, 1316-17 (7th Cir. 1997). Moreover, just as a guilty plea (in which the criminal defendant admits--at least implicitly--the connection between his conduct and interstate commerce) forecloses an appellate attack on subject matter jurisdiction, Krilich cannot now assail the district court's subject matter jurisdiction because he entered into a consent decree in which he agreed that the waters involved were "waters of the United States." Cf. Hugi, 164 F.3d at 380-81; Martin, 147 F.3d at

533.

In response, Krilich also cites United States v. U.S. Fidelity & Guaranty, Co., 309 U.S. 506 (1940), and Jordan v. Gilligan, 500 F.2d 701 (6th Cir. 1974), to support his position that the consent decree was void. Those cases held that the judgments entered by the trial courts were void because the defendants were immune from suit. He also cites Kalb v. Feuerstein, 308 U.S. 433 (1940), which held that a state court lacked jurisdiction to enter a judgment against the defendant because a federal statute divested the court of jurisdiction. These cases, however, involve a different meaning of "jurisdiction." As we explained in Hugi, "some jurisdictional shortcomings are constitutional in nature, for Article III and the eleventh amendment set limits to the duties Congress may assign to the courts; other jurisdictional deficits are just the result of statutory limitations; . . ." Hugi, 164 F.3d at 380. Both U.S. Fidelity and Jordan involved what we referred to in Hugi as the jurisdictional "shortcoming" of immunity. We distinguished that defect from the interstate commerce element which is not jurisdictional in the same sense, but rather is an element of the offense. The absence of such an element is separate from the issue of subject matter jurisdiction. Hugi, 164 F.3d at 380. And Kalb involved the other jurisdictional shortcoming noted in Hugi--a statutory divestment of power, also distinguished from the jurisdictional element of the offense. Hugi, 164 F.3d at 380. As explained in Hugi, both of these jurisdictional shortcomings "affect[ ] a court's subject matter jurisdiction, i.e., a court's constitutional or statutory power to adjudicate a case," id. at 381, whereas the interstate commerce element does not deprive a court of subject matter jurisdiction. Therefore, Krilich's reliance on these cases is misplaced.

In sum, the district court had subject matter jurisdiction over the EPA's case against Krilich because the suit civilly charged a violation of a federal statute which is within the federal courts' federal question jurisdiction. And Krilich's attempt to now assail the court's subject matter jurisdiction fails because he entered into a consent decree stipulating that the waters involved were "waters of the United States," and that is merely an element of the offense and not the basis for federal subject matter jurisdiction./5 Accordingly, we AFFIRM the district court's denial of Krilich's 60(b)(4) motion to bar the enforcement of the penalty.


/1 The EPA's charge was against Robert R. Krilich

individually, and numerous corporations which he controlled. For simplicity, we refer to them merely as "Krilich."

/2 Section 404(a) authorizes the Secretary to issue permits allowing fill materials to be discharged into "navigable waters" but it does not mention "wetlands." See 33 U.S.C. sec. 1344(a).

/3 The Army Corps of Engineers and the EPA share responsibility for administering and enforcing the Clean Water Act. 33 U.S.C. sec.sec. 1319(a)(3), 1344.

/4 On appeal, the EPA asserts that Krilich also filled wetlands which were not isolated. The district court assumed for purposes of Krilich's Rule 60(b)(4) motion that all of the wetlands were isolated intrastate wetlands, and because it does not alter the outcome of this appeal, we also make this assumption.

/5 Because the district court had subject matter jurisdiction over the EPA's complaint based on the terms of the consent decree, we need not determine whether, in light of the Supreme Court's decision in United States v. Lopez, regulation of isolated intrastate wetlands is beyond Congress' power under the Commerce Clause. Compare, United States v. Wilson, 133 F.3d 251 (4th Cir. 1997), with Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers, 191 F.3d 845, 848 (7th Cir. 1999), petition for cert. filed, 68 U.S.L.W. 3480 (U.S. Jan. 14, 2000) (No. 99-1178). See also Cargill, Inc. v. United States, 516 U.S. 955, 958 (1995) (Thomas, J., dissenting from denial of certiorari) ("In this case, the Corps' basis for jurisdiction rests entirely on the actual or potential presence of migratory birds on petitioner's land. In light of Lopez, I have serious doubts about the propriety of the Corps' assertion of jurisdiction over petitioner's land in this case. . . .").