**UNITED STATES of America,**
**Plaintiff,**

v.

**INTERSTATE GENERAL COMPANY,**
**et. al., Defendant.**

**No. Civ. AW–96–1112.**
**No. Cr. AW–95–0390.**

United States District Court,
D. Maryland.

June 12, 2001.

Stephen M. Schenning, United States Attorney, W. Warren Hamel, Assistant United States Attorney, Baltimore, Maryland, for plaintiff.

Alfred H. Moses, Covington & Burling, Washington, D.C., for defendant.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Presently before this Court are Interstate General Company, et. al.'s ("Defendants") Motion to Stay Time Limits in the Consent Decree, Motion to Vacate Order, and Motion for a Writ of Coram Nobis. On May 11, 2001, this Court held a hearing on the pending motions in the above captioned case. After hearing arguments from both parties and reviewing all pleadings in the matter, this Court will hold in abeyance the Defendants Motion to Stay Time Limits in the Consent Decree and deny the Defendants' Motion to Vacate Order, and the Motion for a Writ of Coram Nobis.

## BACKGROUND

In 1995, the Government charged Defendants Interstate Government, Co. ("IGC"), St. Charles Associates and their chief executive officer, James J. Wilson, with placing fill on four parcels of land having the characteristics of wetlands under the Clean Water Act (CWA). The Government asserted jurisdiction to the parcels in questions because they are "adjacent to the headwaters" of two non-navigable creeks. The headwaters are intermittent streams and drainage ditches that average two feet in width and approximately two feet in depth depending on the time of the year. The parcels of land are more than ten miles from the Chesapeake Bay, and more than six miles from the Potomac River. At trial, the Government argued that the headwaters, through a series of culverts and creeks, ultimately flows into the Potomac River. At the end of trial, the jury was instructed that "navigable waters," was defined by the CWA as "the waters of the United States," including all intrastate waters, intermittent streams and all wetlands adjacent to such waters. The Defendants were convicted of four felony counts of "unlawfully attempting to drain" and fill the wetlands parcels. Mr. Wilson was sentenced to 21 months imprisonment and one year supervised release and ordered to pay a $1 million fine. IGC and St. Charles Associates were jointly fined $3 million, placed on probation for five years, and ordered to implement a wetlands restoration and migration plan proposed by the Government.

Defendants appealed their convictions to the U.S. Court of Appeals for the Fourth Circuit. In *United States v. Wilson*, 133

F.3d 251 (4th Cir.1997), the Fourth Circuit reversed the convictions finding that the Court erred in its instructions to the jury on the definition of "waters of the United States." The Fourth Circuit believed that including intrastate waters that have nothing to do with interstate commerce is beyond the definitional limit of "waters of the United States." As a result of the Fourth Circuit's decision, the Defendants' conviction was reversed and remanded to this Court for a new trial. The Government continued to pursue their case against the Defendants. As a result of negotiations, Defendants agreed to a plea. IGC pled guilty to a single felony count and paid a fine of $1.5 million. All charges against Defendants St. Charles Associates and Mr. Wilson were dismissed. Additionally, IGC paid a fine of $400,000 and agreed to implement a wetland remediation plan.

## I. Petition for Writ of Error Coram Nobis

### A. Standard

■ 28 U.S.C. § 1651(a) states that, "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Coram nobis, Latin for in our presence, is a criminal procedural tool whose purpose is to correct errors of fact only.[1] Black's Law Dictionary 337 (6th ed.1990). A writ of coram nobis is to be used in circumstances that compel a course of action that would achieve justice. See *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). A four prong analysis is used to determine when coram nobis relief is appropriate: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3)

adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character. *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir.1987).

### B. The SWANCC Case

The Defendants allege that the Writ of Coram Nobis should be granted in the above captioned case because there has been a subsequent change in the decisional law that makes it clear that the Defendants acts are not within the reach of the CWA, under which they were convicted. The alleged change in the decisional law is contained in the recent Supreme Court case of *Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers*, 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001). ("*SWANCC*"). Briefly, *SWANCC* held that Title 33 CFR § 328.3(a)(3), as clarified and applied, pursuant to the Migratory Bird Rule, exceeds the authority granted to the U.S. Government under § 404(a) of the CWA. Defendants believe that the *SWANCC* decision makes their convicted conduct outside the scope of the CWA. Therefore, the conviction must be vacated because the Defendant was "convicted for conduct we now know is not within the reach of" the CWA. *United States v. Mandel*, 862 F.2d 1067, 1072 (4th Cir.1988). It is the opinion of this Court, however, that the Defendants' reading of the *SWANCC* case is overly broad and misplaced.

In *SWANCC*, a consortium of suburban Chicago municipalities, selected as a solid waste disposal site, an abandoned sand and gravel pit with excavation trenches that had developed into permanent and seasonal ponds. Petitioners contacted the U.S. Army corps of Engineers ("Corps") to determine whether they needed a landfill

---

1. Fed.R.Civil P. 60(b) has abolished coram nobis as a remedy in civil proceedings.

permit to dump fill into the area. The Corps denied the request based on their Migratory Bird Rule. The Migratory Bird Rule was an attempt by the Corps to clarify 33 CFR § 328.3(a)(3). In summation, the Migratory Bird Rule stated that the Corps had jurisdiction pursuant to the CWA over waters that provide habitat for migratory birds. The Corps found that approximately 121 bird species had been observed at the gravel pit site, including several species that were known to depend upon aquatic environments for a significant portion of their life requirements. The lower court had held that the aggregate effect of the habitat of migratory birds on interstate commerce was substantial because each year millions of Americans cross state lines and spend over a billion dollars to hunt and observe migratory birds. *Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers,* 191 F.3d 845, 850 (7th Cir.1999). The Supreme Court held that the Migratory Bird Rule is not fairly supported by the CWA. *SWANCC,* at 680. The court believed that permitting the Corps to claim federal jurisdiction over ponds and mudflats would result in "a significant impingement of the States' traditional and primary power over land and water use." *Id.* at 684. *See Hess v. Port Authority Trans–Hudson Corporation,* 513 U.S. 30, 44, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994).

*SWANCC* did deal with the same statute which was used to convict the Defendants. 33 CFR § 328 defines "waters of the United States" under the CWA. The *SWANCC* holding essentially invalidated 33 CFR § 328.3(a)(3) which defines "waters of the United States" in part as,

> "All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds,

the use, degradation or destruction of which could affect interstate or foreign commerce."

The Supreme Court opined that this definition was in contrast to the CWA's original definition of "waters of the United States." Originally, "waters of the United States" referred to navigable waters. Navigable waters was defined in 1974 as, "those waters of the United States which are subject to the ebb and flow of the tide, and/or presently, or have been in the past, or may be susceptible for use for purposes of interstate or foreign commerce". 33 CFR § 209.120(d)(1). The Army Corps was unable to convince the court that the Corps expansion of the definition of "waters of the United States," codified as 33 CFR § 328.3(a)(3) was approved by Congress. Because the Supreme Court found there was no congressional approval to the expansion of the definition, the court relied on the original 1974 definition of the CWA. This decision led the Supreme Court to hold that the Corps' Migratory Bird Rule, along with 33 CFR § 328.3(a)(3), were invalid.

## C. *SWANCC* as Applied to the Present Case

The Defendants wish to have *SWANCC* read as having drawn a new jurisdiction line under the CWA. The Defendants believe that the Government's jurisdiction should now be limited to (1) navigable waters, as traditionally defined by the 1974 act, and (2) wetlands and other waters that are immediately adjacent to navigable waters. Based on this new jurisdictional definition, the Defendants posit that the parcels of land in question located in Charles County, Maryland are not within the Government's jurisdiction as provided for by the CWA. The Defendants rely primarily on language in the *SWANCC* decision that addresses the states' rights in regulating

its own land. Furthermore, the Defendants latch on to language by the court expressing a concern that the expanded definition of "waters of the United States" is rendering the definition of "navigable" meaningless. The Court rejects this interpretation of *SWANCC*.

The Government in their continued pursuit of the Defendants for prosecution, relied solely on their primary theory of the case (the adjacent/abutting land theory of tributaries impacting on navigable waters) which involved 33 CFR § 328.3(a)(1), (a)(5), and (a)(7). The *SWANCC* case is a narrow holding in that only 33 CFR § 328.3(a)(3), as applied to the Corps creation of the Migratory Bird Rule, is invalid pursuant to a lack of congressional intent. The *SWANCC* court specifically states that, "we conclude that the 'Migratory Bird Rule' is not fairly supported by the CWA." *Id.* at 680. The *SWANCC* case choose not to determine the exact meaning of "navigable waters" as used in § 404(g) of the CWA. In doing so, the Supreme Court stated, ". . . it is also plausible, as petitioner contends, that Congress simply wanted to include all waters adjacent to 'navigable waters,' such as *nonnavigable tributaries and streams.* The exact meaning of § 404(g) is not before us and we express no opinion on it." *Id.* at 682. (Emphasis added). Because the Supreme Court only reviewed 33 CFR § 328.3(a)(3), it would be improper for this Court to extend the *SWANCC* Court's ruling any farther than they clearly intended.

■ Returning to the four prong test that must be met before coram nobis relief can be granted, the Defendants fail the fourth prong. Defendants, arguably, can satisfy the first three requirements. Because the Defendants have already carried out their punishment as decreed by the plea agreement, there is no more usual remedy available to the Defendants. Sec-

ondly, the *SWANCC* case was not decided until January 19, 2001. Therefore, Defendants could not have contested their conviction prior to then. Thirdly, there remains a valid adverse consequence as the result of the Defendants guilty convictions to create a valid controversy for the purposes of Art. III. "Conviction of a felony imposes a status upon a person which not only makes him vulnerable to future sanctions through new civil disability statutes, but which also seriously affects his reputation and economic opportunities." *Parker v. Ellis*, 362 U.S. 574, 593–94, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960) (Chief Justice Warren dissenting). However, Defendants can not meet the last prong of the coram nobis test. In the present case, the error is not of the most fundamental character because the *SWANCC* case does not invalidate the Defendants conviction. The *SWANCC* case invalidates the Migratory Bird Rule created under 33 CFR § 328.3(a)(3). The Defendants pled guilty to charges brought pursuant to 33 CFR § 328.3(a)(1), (a)(5), and (a)(7). Therefore, it is the ruling of this Court that the *SWANCC* case does not invalidate the convictions of the Defendants. The Writ of Error Coram Nobis will be denied.

## II Defendants' Motion to Vacate

The Government and the Defendants entered into a consent decree in the civil case concerning the Charles County, Maryland parcels on November 22, 1999. Memorandum of Law in Support of Defendants' Motion to Vacate Consent Decree, Exhibit B. As a result of the *SWANCC* decision, the Defendants seek relief from the consent decree. The Defendants wish for this Court to vacate the consent decree pursuant to Fed.R.Civ.P. 60(b). Rule 60 lists the reasons that the Court may relieve a party or a party's legal representation from a final judgment, order, or proceed-

ing. Among the reasons advanced by Defendants are "(5) … a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b). As further support for their request, the Defendants direct this Court to *Rufo v. Inmates of Suffolk County,* 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). In *Rufo,* the Supreme Court stated that a consent decree must be vacated where, "the decisional law is changed to make legal what the decree was designed to prevent." *Id.* at 388, 112 S.Ct. 748.

The Court will deny the Defendants Motion to Vacate Consent Decree signed on November 22, 1999. The Defendants advance the same arguments discussed and analyzed by this Court in its Writ of Error Coram Nobis. The Court does not believe that the *SWANCC* decision makes legal what the decree was designed to prevent. Furthermore, as indicated before, the Court concludes that the *SWANCC* decision did not reverse or vacate the consent decree. As stated earlier by this Court, the *SWANCC* decision invalidated the "Migratory Bird Rule" and 33 CFR § 328.3(a)(3). Defendants were convicted based upon 33 CFR § 328.3(a)(1), (a)(5), and (a)(7).

## III The Plea Agreement

The Court is aware that there is a difference of opinion with regards to the application of *SWANCC* as applied to the CWA. *See United States v. Buday,* 2001 WL 363702 (D.Mont.). *cf. D.E. Rice v. Harken Exploration Company,* 250 F.3d 264, 2001 WL 422051 (5th Cir.2001). Regardless of the final determination of the scope of *SWANCC,* the Court believes that the plea agreement entered into by the parties provides an additional cogent reason to deny the relief sought by the Defendants.

The plea agreement was memorialized in the consent decree signed on November 22, 1999. The Defendants were more than adequately represented by counsel and were aware that based on the Fourth Circuit's ruling in *U.S. v. Wilson,* the Defendants were entitled to a new trial. Regardless, the parties assessed their relative risks and sacrificed in order to come up with the consent decree. The Government gave up its claims against Mr. Wilson and St. Charles Associates, while the Defendants gave up their right to a new trial. By all accounts, the decision to enter in to a consent decree was done intelligently and voluntarily by both parties. Because the Defendants believe that *SWANCC* limits the scope of the Government's jurisdiction under the CWA, and the parcels of land in the present case are not within the Government's jurisdiction, they now argue that the consent decree should be vacated. The Defendants cannot seek to vacate the consent decree because they have already subjected themselves to the Court's subject matter jurisdiction. Memorandum of Law in Support of Defendants' Motion to Vacate Consent Decree, Exhibit A, pg. 3, ¶ 1. For this point, the Court finds the case *United States v. Krilich,* 209 F.3d 968 (7th Cir.2000) instructive. In *Krilich,* a developer who allegedly filled in wetlands in violation of the CWA entered into a consent decree with the Environmental Protection Agency (EPA). The developer later filed a motion to vacate the original judgment as void under Fed.R.Civ.P. 60(b)(4). While the Seventh Circuit does cite to the *SWANCC* lower court deci-

sion[2], the court's decision is based upon the meaning of "jurisdiction" within the Rule 60(b)(4) framework.

The issue of whether the parcels of land in Charles County, Maryland are parcels of land that fit under the "waters of the United States" definition in the CWA is merely an element of the crime that the Government needed to prove. "Jurisdiction," as used by Defendants, refers to whether the parcels affect interstate commerce. "The nexus with interstate commerce, which courts frequently call the 'jurisdictional element,' is simply one of the essential elements of the offense." *Id.* at 972. (Quoting *Hugi v. United States,* 164 F.3d 378, 381 (7th Cir.1999)). Jurisdiction, as used by this Court, refers to the Court's ability to hear the subject matter and enforce the consent decree. In other words, whether the parcels of land were navigable or abutting navigable waters is simply an element of the crime with which the Defendants were charged with. This Court, clearly, still has subject matter jurisdiction over the case by virtue of the fact that they were charged with a federal crime pursuant to 18 U.S.C. § 3231. Since this Court has subject matter jurisdiction over the case, the consent decree can not be attacked because the Government did not prove an element of the crime; namely that the Government did not have jurisdiction to bring the instant case based on the parcels of land in Charles County, Maryland. "Once a defendant pleads guilty in a court which has jurisdiction of the subject matter and of the defendant ... the court's judgment cannot be assailed on grounds that the government has not met its burden of proving 'so-called jurisdictional facts.'" *Hugi,* 164 F.3d at 381. Based upon case law and the Court's subject matter jurisdiction in the instant case, the Defendants cannot vacate the consent decree, regardless of whether the parcels of land in question fall under the jurisdiction of the Government.

## CONCLUSION

The Court will deny the Defendants Writ of Error Coram Nobis. The Court believes that the Defendants' reading of the *SWANCC* case is overly broad and misplaced. The *SWANCC* case was a narrow holding dealing with the Migratory Bird Rule and 33 CFR § 328.3(a)(3). Defendants were prosecuted under 33 CFR § 328.3(a)(1), (a)(5), and (a)(7). Furthermore, the Court will deny Defendants Motion to Vacate Consent Decree for the same reasons. As for the Motion to Stay Time Limits on the Consent Decree, the Court requests both parties to set up a conference call with chambers to discuss the issue of a stay in light of the Court's Memorandum Opinion. The parties are, of course, urged to work out a negotiated solution in lieu of a conference call. A separate Order consistent with this Opinion will follow.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this 12th day of June, 2001 by the United States District Court for the District of Maryland, **ORDERED**:

1. That Defendants Motion for Writ of Error Coram Nobis (CR AW-95-0390) [224-1] BE, and the same hereby is, **DENIED**;

2. That Defendants Motion to Vacate Consent Order (CV-96-1112) [18-1] BE, and the same hereby is, **DENIED**;

3. That Defendants Motion to Stay Time Limits in Consent Decree (CV-96-

2. 191 F.3d 845 (7th Cir.1999)

1112) [17-1] BE, and the same hereby is, **HELD IN ABEYANCE;**

4. That the Clerk transmit copies of this Memorandum Opinion and Order to all parties of record.