In the

# United States Court of Appeals
### For the Seventh Circuit

No. 01-2746

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ROBERT R. KRILICH, KRILICH COMPANIES, INC.,
RIVERWOODS DEVELOPMENT CORP., et al.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 92 C 5354—**William T. Hart**, *Judge.*

ARGUED MAY 14, 2002—DECIDED SEPTEMBER 9, 2002

Before COFFEY, MANION, and EVANS, *Circuit Judges.*

MANION, *Circuit Judge.* In 1992, the EPA sued Robert Krilich and several corporations he controlled, alleging violations of the Clean Water Act. The parties entered into a Consent Decree resolving the case. However, after the Supreme Court held that the Army Corps of Engineers exceeded its authority in extending the definition of "navigable waters" under the Clean Water Act to include intrastate waters used by migratory birds, Krilich moved the district court to vacate the Consent Decree. The district court refused to do so. Krilich appeals, and we affirm.

## I. Factual and Legal Background

On August 7, 1992, the United States Environmental Protection Agency ("EPA") filed a civil complaint against the defendants,[1] alleging that they violated the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA"). The government alleged that Krilich violated Section 301 of the CWA by discharging fill material without a permit into wetlands on two Illinois sites that he was developing: the Royce Renaissance site in Oakbrook, Illinois and the Sullivan Lake site in Lakemoor, Illinois. Section 301(a) prohibits the "discharge of any pollutant," except as otherwise authorized by the CWA. 33 U.S.C. § 1311(a). Section 404 of the CWA authorizes the Secretary to issue a permit approving "the discharge of dredged or fill material into the navigable waters." 33 U.S.C. § 1344(a). "Navigable waters" are defined as "waters of the United States." 33 U.S.C. § 1362(7). "Waters of the United States" are further defined by regulations promulgated under the CWA. 33 C.F.R. § 323.2(a). *See generally* 33 C.F.R. Pt. 328. Section 328.3(a)(3) further defines "waters of the United States" to include "[a]ll other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce." 33 C.F.R. § 328.3(a)(3).

While the suit was pending and the parties were negotiating, this court issued a decision holding that the EPA's construction of "waters of the United States" as including intrastate, nonadjacent or "isolated" wetlands under

---

[1] The government filed suit against Robert Krilich individually and several corporations which he controlled. Throughout this opinion, we simply refer to "Krilich" or the "defendants".

40 C.F.R. § 230.3(s)(3)[2] exceeded its authority under the CWA. *See Hoffman Homes, Inc. v. Adm'r, United States Envtl. Prot. Agency*, 961 F.2d 1310, 1316 (7th Cir. 1992) ("*Hoffman Homes I*"), *vacated by* 975 F.2d 1554 (7th Cir. 1992). In *Hoffman Homes I*, this court further held that, even if the regulation was reasonable under the CWA, Congress lacked authority under the Commerce Clause to regulate such waters based simply on the actual or potential use of such waters by migratory birds.[3] *Id.* at 1321. Following *Hoffman Homes I*, Krilich and the EPA drafted a Consent Decree to settle their dispute. The Consent Decree acknowledged the potential impact of the *Hoffman Homes I* decision by incorporating the following provisions:

## IV. DEFINITIONS

10. Except as specifically modified herein, the terms "waters of the United States"; "wetlands"; "dredged material"; "fill material"; "discharge of dredged material"; and "discharge of fill material" shall have the meanings assigned them at 40 C.F.R. § 230.3 or 33 C.F.R. § 323.2. "EPA" means the United States Environmental

---

[2]   40 C.F.R. § 230.3(s)(3), the EPA regulation that defines "waters of the United States," is identical to the Army Corps of Engineers regulation, 33 C.F.R. § 328.3(a)(3), also defining the phrase. As noted, *infra*, both are referenced in Paragraph 10 of the Consent Decree.

[3]   The Migratory Bird Rule was intended to clarify the scope of 33 C.F.R. 328.3(a)(3), and provided that "waters of the United States . . . also include the following waters: a. Which are or would be used as habitat by birds protected by Migratory Bird Treaties; or b. Which are or would be used as habitat by other migratory birds which cross state lines . . . ." 51 Fed. Reg. 41217 (1986).

Protection Agency, and "Corps" means the United States Army Corps of Engineers.

* * *

V.  WATERS OF THE UNITED STATES

17. For purposes of this Consent Decree, the parties shall treat wetland and open water areas depicted on Exhibit 1, together with the new wetland and open water area created pursuant to Part VII (injunctive relief) and depicted on Exhibit 2, as waters of the United States located on the Royce Renaissance Property.

* * *

20A. The Defendants shall continue to treat wetland and open water areas depicted on Exhibit 1 as waters of the United States until the mandate issues in Hoffman Homes, Inc. v. EPA, No. 90-3810 (7th Cir. April 20, 1992) and until proceedings related to any appeal, petition for certiorari, or remand are completed. Following completion of these proceedings, unless pertinent portions of the Seventh Circuit's April 20, 1992 decision are reversed, Exhibit 1 areas W2A, W2B, W3, W5B, and W9 shall be excluded from the obligations imposed in Paragraph 17.

Thus, the parties expressly excluded some waters on the defendant's property and agreed to treat the rest of the waters as "waters of the United States."

Before the parties approved the final Consent Decree, *Hoffman Homes I* was vacated "on September 4, 1992, before the birds had reason to migrate south." *United States v. Krilich*, 209 F.3d 968, 970 (7th Cir. 2000) ("*Krilich IV*"). Thereafter, the parties signed the Consent Decree, incorporating the *Hoffman Homes I* language, notwithstanding

the fact that it had been vacated. The Consent Decree required the defendants to undertake certain remediation and mitigation activities and to pay fines for filling wetlands. On October 29, 1992, the district court entered final judgment under the Consent Decree, and under the terms of the Decree, retained jurisdiction.[4]

Nine months after the Consent Decree was agreed upon and final judgment entered, this court issued *Hoffman Homes II*, wherein we held that the EPA lacked jurisdiction over the wetlands at issue because the government had failed to present substantial evidence (under the "Migratory Bird Rule") that migratory birds actually used the wetlands as a habitat. *See Hoffman Homes, Inc. v. Adm'r, United States Envt'l Prot. Agency*, 999 F.2d 256, 261-62 (7th Cir. 1993) ("*Hoffman Homes II*"). Unlike *Hoffman Homes I*, we did not reach the question of whether the Migratory Bird Rule was within the limits of Congress' power under the Commerce Clause.

On September 27, 1995, the government moved to enforce the Consent Decree, alleging that Krilich had failed to construct the replacement wetland by the date specified in the Consent Decree and that Krilich had violated the Decree by discharging fill material into an area known as W9, which the government contended was a "water of the United States." The district court agreed with the government regarding Krilich's failure to perform remediation and imposed civil penalties of $1,307,500. *See United States v. Krilich*, 948 F.Supp. 719, 728 (N.D. Ill. 1996) ("*Krilich I*"). With respect to the allegation that Krilich had improp-

---

[4]  Paragraph 2 of the Consent Decree provides: "The Court shall retain jurisdiction in order to enable any party to apply to the Court at any time for such further relief as may be necessary to interpret, enforce, or modify this Decree."

erly discharged fill material into W9, the district court concluded that "pertinent portions" of *Hoffman Homes I* had not been "reversed" by *Hoffman Homes II* within the meaning of Paragraph 20A of the Consent Decree. *Id.* at 725. Therefore, the district court concluded that, under the Decree, W9 was not a "water of the United States" and accordingly denied the government's motion to impose a penalty for filling that area. Krilich appealed the district court's decision to impose penalties for his failure to perform remediation, *id.*, and this court affirmed, but remanded the case to the district court to correct an error made in calculating that penalty. *See United States v. Krilich*, 126 F.3d 1035, 1037-38 (7th Cir. 1997) ("*Krilich II*"). On remand, in November 1998, Krilich moved pursuant to Rule 60(b)(4) to vacate the district court's original judgment entering the Consent Decree, arguing that the court lacked subject matter jurisdiction over the EPA's complaint. Specifically, Krilich argued that

> the land he allegedly filled was an "isolated intrastate wetland" which was beyond the federal government's commerce power to regulate. Because Congress lacked authority to regulate his property, Krilich contend[ed] that the district court lacked subject matter jurisdiction over the EPA's complaint. And even though he agreed to the terms of the consent decree, which included a provision that the wetlands filled were "waters of the United States," Krilich [argued] that this does not change the result because you can never consent to subject matter jurisdiction, and lack of jurisdiction can be raised at any time.

*Krilich IV*, 209 F.3d at 971. The district court rejected Krilich's argument, *United States v. Krilich*, 1999 WL 182333 (N.D. Ill. March 25, 1999) ("*Krilich III*"), and on appeal this court held that "the district court had subject matter juris-

diction over the EPA's case against Krilich because the suit civilly charged a violation of a federal statute which is within the federal courts' federal question jurisdiction." *Krilich IV*, 209 F.3d at 973. Additionally, we held that Krilich's argument failed "because he entered into a consent decree stipulating that the waters involved were 'waters of the United States.' " *Id.* Finally, we stated that, because the district court had subject matter jurisdiction based on the terms of the Consent Decree, we did not need to reach the question of whether the regulation of isolated intrastate wetlands exceeded Congress' power under the Commerce Clause. *Id.* at 973, n. 5.

Last year, nine months after we issued *Krilich IV*, the Supreme Court rendered a decision holding that 33 C.F.R. § 328.3(a)(3), as clarified by the Migratory Bird Rule, "exceeds the authority granted to [the Army Corps of Engineers] under § 404(a) of the CWA." *Solid Waste Agency of Northern Cook Co. v. United States Army Corps of Engineers*, 531 U.S. 159, 174 (2001) ("*SWANCC*"). In interpreting Section 404(a), the Court concluded that nothing in the text of the CWA indicated that Congress intended to allow the jurisdiction of the Corps of Engineers to extend to "ponds that are *not* adjacent to open water." *Id.* at 168. The Supreme Court did not reach the question of whether Congress could exercise such authority consistent with its power to legislate under the Commerce Clause. *Id.* at 162, 174.

After *SWANCC* was issued by the Supreme Court, Krilich brought the present motion in federal district court, arguing that, under *SWANCC*, the waters affected by the Consent Decree are not subject to the EPA's authority under the CWA. Therefore, Krilich reasoned, the execution and enforcement of the Consent Decree by the EPA is an *ultra vires* act and the Consent Decree was void *ab initio.* Krilich

identified three bases for the district court's authority to vacate or modify the Decree: the express reservation-of-jurisdiction clause contained in Paragraph 2 of the Consent Decree, the court's inherent power to modify its judgments, and Rule 60(b)(5) in light of a change in the law, namely, the *SWANCC* decision.[5]

In considering Krilich's motion, the district court assumed that all of the waters at issue were nonnavigable, isolated wetlands that had no surface connection to the nearest stream or nearest navigable body of water.[6] *Krilich V*, 152 F.Supp.2d at 989. Even so, the district court denied the defendants' motion, holding that even if the Consent Decree were *ultra vires*, it did not have the authority to vacate or modify it. The court reached this conclusion for

---

[5] Even though Krilich brought the action under the Consent Decree's express reservation-of-jurisdiction clause and under the court's inherent authority, and only alternatively under Rule 60(b)(5), the court treated his motion as one under Rule 60(b). *United States v. Krilich*, 152 F.Supp.2d 983, 990 (N.D. Ill. 2001) ("*Krilich V*"). The district court noted that its inherent authority to modify its judgments was not more expansive than the authority provided in Rule 60(b). *Id.* Additionally, the district court concluded that its powers under Paragraph 2 were not broader than its authority under Rule 60(b). *Id.* Krilich abandons his reliance upon the court's inherent authority on appeal, but as explained below, continues to argue that both Rule 60(b)(5) and Paragraph 2 of the Consent Decree serve as independent bases for modification.

[6] The defendants submitted an expert report of Gary C. Schaefer, P.E. in support of their motion, contending that all the waters at issue under the Consent Decree were isolated.

several reasons,[7] but only one is challenged on appeal: whether the Decree should be modified under Rule 60(b)(5) due to a change in the law.[8] The district court first noted that in *Hoffman Homes I* this court held that "isolated wetlands" were not subject to CWA regulation. *Id.* at 994. The court then noted that the parties took this decision into account by referencing it in Paragraph 20A of the Consent Decree and expressly excluding specified wetlands that Krilich contended were isolated. *Id.* The court also noted the Supreme Court's decision in *SWANCC* holding that the Migratory Bird Rule exceeded the agencies' authority under the CWA. *Id.* The district court determined that the Supreme Court's decision in *SWANCC* was no more narrow than *Hoffman Homes I*, and since

---

[7] The court analyzed Krilich's motion under Rule 60(b)(4), which provides for relief if the judgment is void, and determined that the fact that a party to a consent judgment lacked authority to consent does not void the judgment itself. *Krilich V*, 152 F.Supp.2d at 991. Next, the court analyzed Krilich's motion under Rule 60(b)(1) for mistake of law and rejected this ground as untimely. *Id.* at 992. *See* Fed. R. Civ. P. 60(b) (Rule 60(b)(1) motion must be brought within one year of entry of judgment). Third, the district court analyzed Krilich's motion under the catch-all provision of Rule 60(b)(6) and concluded that because Krilich had stipulated that the property in question constituted "waters of the United States" it was bound by that stipulation. 152 F.Supp.2d at 992. *Cf. Krilich IV*, 209 F.3d at 972 (Krilich could not "assail the district court's subject matter jurisdiction because he entered into a consent decree in which he agreed that the waters involved were 'waters of the United States.' "). Krilich does not appeal these determinations and, therefore, we need not review them.

[8] Rule 60(b)(5) provides, in part, that a judgment may be modified if "it is no longer equitable that the judgment should have prospective application." Fed. R. Civ. P. 60(b)(5).

Paragraph 20A of the Consent Decree was crafted with that decision in mind, the district court concluded that the Decree was drafted in light of controlling precedent that was no less favorable to Krilich than *SWANCC. Id.* at 994-95. The court also noted that "[e]quity does not require that the Decree be reopened so that defendants may now litigate whether the wetlands on the property are actually isolated. Defendants chose not to do so more than eight years ago and the legal framework has not changed in a manner that would justify doing it today." *Id.* at 995.

Krilich appeals, claiming that the district court should have vacated or modified the Consent Decree under either Rule 60(b)(5) or the Consent Decree's reservation-of-jurisdiction clause in Paragraph 2.

## II.  Analysis

### A.  Standard of Review

We review a denial of Rule 60(b)(5) relief for an abuse of discretion. *See Protectoseal Co. v. Barancik*, 23 F.3d 1184, 1186 (7th Cir. 1994). We review a district court's interpretation of a consent decree *de novo. See Alliance to End Repression v. City of Chicago*, 119 F.3d 472, 474 (7th Cir. 1997).

Although the defendants submitted a professional engineer's expert report attempting to establish that all the wetlands subject to the Consent Decree are isolated, the district court did not conduct a hearing on that issue, nor did it reach a conclusion. Rather, it assumed that all waters at issue were nonnavigable, isolated wetlands with no surface connection to the nearest stream or nearest navigable body of water. *Krilich V*, 152 F.Supp.2d at 989. We proceed under the same assumption because, as discussed below, even assuming that the wetlands were isolated, Krilich is nonetheless bound by the Consent Decree.

**B.   Grounds for Relief under Rule 60(b)(5)**

A consent decree, while contractual in nature, is enforceable as "a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk Co. Jail*, 502 U.S. 367, 378 (1992). Accordingly, parties wishing to modify or vacate a consent decree may do so by resorting to Rule 60(b). In moving to modify or vacate the Consent Decree, Krilich relies upon the third clause of Section (b)(5) of Rule 60, which provides that a judgment may be modified if "it is no longer equitable that the judgment should have prospective application." Fed. R. Civ. P. 60(b)(5). In interpreting this clause of Rule 60(b)(5), the Supreme Court has set forth a two-part test to determine whether modification is warranted. *See Rufo*, 502 U.S. at 383. Under that test, a party seeking to modify a Consent Decree "bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Id.* A party may meet the initial burden of establishing a significant change in circumstances "by showing a significant change either in factual conditions or in law." *Id.* at 384. Krilich does not contend that there has been a change in factual conditions, only that the Supreme Court's decision in *SWANCC* is a significant change in the law. If the moving party meets this initial burden, "the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 383.

In *Rufo*, the Supreme Court identified instances in which a significant change in law may have occurred. For example, the Court stated, a "consent decree must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal law. But modification of a consent decree may be warranted when the statutory or decisional

law has changed to make legal what the decree was designed to prevent." *Id.* at 388. *See also Agostini v. Felton,* 521 U.S. 203, 215 (1997) (granting a Rule 60(b)(5) modification of a permanent injunction based on intervening law). The *Rufo* Court also noted that "[w]hile a decision that clarifies the law will not, in and of itself, provide a basis for modifying a decree, it could constitute a change in circumstances that would support modification if the parties had based their agreement on a misunderstanding of the governing law." *Id.* at 390.

Krilich argues that Rule 60(b)(5) provides a basis to modify the Decree, and that the district court abused its discretion by denying him relief thereunder. Specifically, he contends that *SWANCC* represents a significant change in the law under the third clause of Rule 60(b)(5), thereby requiring the Consent Decree to be vacated, or at a minimum, modified prospectively. He argues that *SWANCC* establishes that the government never had authority to regulate the waters at issue and that "it is difficult to imagine a more relevant change in the law." Accordingly, he reasons that *SWANCC* makes clear that the entry and continued enforcement of the Consent Decree are *ultra vires* acts by the EPA, requiring the Decree to be vacated. *See, e.g., Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380 (1947) (where agency granted crop insurance, and later found out that crop was planted on re-seeded land for which agency could not issue insurance policies, court found insurance policy void *ab initio*). *See also Dunn v. Carey,* 808 F.2d 555, 559-60 (7th Cir. 1986) ("Because a consent decree's force comes from agreement rather than positive law, the decree depends on the parties' authority to give assent.").

Initially, Krilich argues that the district court improperly applied the *Rufo* test by reasoning that the parties were

not operating under a *misunderstanding* of law and therefore that Krilich was not entitled to vacate the Consent Decree. He argues that the district court should instead have asked whether *SWANCC changed the law*. However, the district court did not improperly apply the *Rufo* test. The district court concluded that *SWANCC* was not a significant change in the law by reasoning that the Consent Decree was drafted in light of a law (as enunciated in *Hoffman Homes I*) that was as favorable to Krilich as was the later *SWANCC* decision. In essence, the district court was determining whether "the statutory or decisional law has changed to make legal what the decree was designed to prevent." *Rufo*, 502 U.S. at 388. To the extent that the district court did question whether the parties misunderstood the law, *Rufo* specifically identifies the parties' misunderstanding of law, as later clarified by another decision, as a circumstance where modification might be warranted. *Rufo*, 502 U.S. at 390.

Krilich also contends that the district court erred in relying upon the fact that the Consent Decree was drafted in light of *Hoffman Homes I*, because it had been vacated and was no longer the governing law of this circuit by the time the Decree was entered. Therefore, he claims that we should analyze whether *SWANCC* represents a significant change in the law from the law *pre-Hoffman Homes I*, wherein we had merely held "that Congress intended the Clean Water Act to regulate all the 'navigable waters' within its constitutional reach under the Commerce Clause." *See Hoffman Homes I*, 961 F.2d at 1316-17 (citation omitted). However, this argument ignores the fact that notwithstanding the vacation of *Hoffman Homes I*, the parties agreed to incorporate its interpretation of the law into the Consent Decree and Krilich benefitted from that decision. Under these circumstances, it would not be equitable to compare a change in the law pre-*Hoffman Homes*

*I* to *SWANCC*. Rather, under Rule 60(b)(5), we must determine whether the law has changed significantly enough such that it would be equitable to modify **this** Consent Decree that itself incorporated the legal standards set out in *Hoffman Homes I.*

That brings us to the heart of Krilich's argument: that *SWANCC* eliminated the EPA's authority to regulate the wetlands at issue because they are nonnavigable, isolated, intrastate waters. Unfortunately for him, he already agreed that the waters were "waters of the United States." To get around his stipulation, he contends that the holding in *Hoffman Homes I* is narrower than *SWANCC*, and therefore *SWANCC* does constitute a significant change in law under *Rufo* justifying modification of the Decree. He argues that, in *SWANCC*, the Supreme Court removed from the Corps' regulatory authority all waters that are not adjacent to bodies of open water, *SWANCC*, 531 U.S. at 168, whereas in *Hoffman Homes I*, the court defined isolated wetlands as those that "have no hydrological connection to any body of water." 961 F.2d at 1314. But the precise holding of *SWANCC* was not so broad. While reaffirming its prior holding that Section 404 encompassed non-navigable wetlands adjacent to navigable waters, 531 U.S. at 167-68 (citing *United States v. Riverside Bayview Homes Inc.*, 474 U.S. 121 (1985)), the Court explicitly declined to further determine the exact meaning of "navigable waters." *SWANCC*, 531 U.S. at 171. And, it declined to reach any constitutional question. *Id.* at 174. Rather, in *SWANCC*, the Supreme Court merely held that the definition of "waters of the United States" under 33 C.F.R. § 328.3(a)(3), as clarified by the Migratory Bird Rule, "exceeds the authority granted to [the Corp] under § 404(a) of the CWA." *Id.* This limited holding does not represent a significant change in the law such that it would be equitable to modify or vacate the Consent Decree.

Moreover, even if *SWANCC* is a significant change in the law from *Hoffman Homes I*—it is not a significant change that is relevant to this Consent Decree. There is nothing in the Consent Decree establishing that the Migratory Bird Rule was the sole basis for the EPA's assertion of authority over Krilich's property, and therefore *SWANCC* is not a relevant change in the law such that this Consent Decree should be modified. The defendants' own "Motion to Bar Enforcement of Penalty," filed with the district court in 1998 on remand to the district court from our decision in *Krilich II*, acknowledged that "Paragraph 1 of the Consent Decree recites that jurisdiction is based upon the Clean Water Act and other statutes. Paragraph 10 adopts the regulatory definition of wetlands. The Consent Decree does not rely upon the wetlands as a migratory bird habitat as a basis for Commerce Clause jurisdiction." Instead, as the defendants argued in that motion, the government merely relied "upon its authority to define wetlands under the regulations." As the district court noted when the defendants first attempted to challenge subject matter jurisdiction, "there is nothing in the Decree . . . that makes it apparent that the mitigation plan may have been based solely on the filling of isolated wetlands. Neither was there any information indicating that those wetlands' only possible connection to interstate commerce was their occasional use by migratory birds." *Krilich III*, 1999 WL 182333 at * 2. Thus, *SWANCC* has no appreciable impact on *this* Consent Decree.

As the Consent Decree demonstrates, the parties were already operating on the premise that the Migratory Bird Rule did not authorize the EPA to regulate otherwise isolated wetlands, as that was our conclusion in *Hoffman Homes I*, which the parties expressly incorporated into Paragraph 20A of their agreement. In fact, Paragraph 20A carved out certain wetlands as beyond the EPA's authority

and exempted them from the reach of the Consent Decree's requirements. But the parties also agreed that the EPA had authority to regulate Krilich's other wetlands. *SWANCC* in no way altered the other regulations interpreting "waters of the United States."

If a party believes that the waters at issue on his own property are not properly subject to the EPA's authority, whether under the rationale of *Hoffman Homes I*, *SWANCC* or under some other theory, he should not stipulate otherwise. But that is exactly what Krilich did, to his continued dismay. He expressly agreed that certain waters on his property constituted "waters of the United States," subject to regulation by the EPA. Like most parties that enter into a settlement or plea agreement, he presumably made a tactical decision that the terms of the Consent Decree were more favorable than the costs or risks of continued litigation. Accordingly, we conclude that *SWANCC* effected no relevant change in decisional law such that the district court should have modified the Consent Decree. Nor does *SWANCC* establish that the EPA's entry into and continued enforcement of the Consent Decree are *ultra vires* acts. "To hold that a clarification in the law automatically opens the door for relitigation of the merits of every affected consent decree would undermine the finality of such agreements and could serve as a disincentive to negotiation of settlements in . . . litigation." *Rufo*, 502 U.S. at 389.[9]

---

[9] Because we conclude that Krilich did not meet his burden of establishing a change in law warranting modification of the Consent Decree, we need not reach the question whether the proposed modification is suitably tailored to the changed circumstance. *Rufo*, 502 U.S. at 383.

### C. Grounds for Relief under Reservation-of-Jurisdiction Clause

Krilich also argues that the district court had authority to vacate or modify the Decree under Paragraph 2, its reservation-of-jurisdiction clause. As previously noted, the reservation clause expressly provided: "The Court shall retain jurisdiction in order to enable any party to apply to the Court at any time for such further relief as may be necessary to interpret, enforce, or modify this Decree." In analyzing Krilich's argument, the district court concluded that it could not interpret this clause outside the bounds of Rule 60(b). *Krilich V*, 152 F.Supp.2d at 990. Krilich argues that such an interpretation makes the clause meaningless. We note, however, that while relying on the reservation-of-jurisdiction clause as an additional basis for modifying the Consent Decree, Krilich does not identify any standard or test broader than the Supreme Court's test in *Rufo* that would result in a different outcome. We need not decide, however, whether this reservation-of-jurisdiction clause provided the district court with authority beyond Rule 60(b) for vacating the Consent Decree because the reasons Krilich presented for vacating the Consent Decree are misplaced. As discussed above, the Supreme Court's decision in *SWANCC* was not more favorable to Krilich than *Hoffman Homes I*, which was the basis for the Consent Decree. Nor does *SWANCC* establish that the Government exceeded its authority in entering into the Consent Decree. Therefore, whether Krilich's motion was considered under Rule 60(b)(5) or under the reservation-of-jurisdiction clause is immaterial because his claim fails in either case.

### III. Conclusion

Krilich voluntarily entered into the Consent Decree with the government, agreeing to resolve their dispute without recourse to further litigation. At that time, the parties were operating under the *Hoffman Homes I* view of the law. The Supreme Court's later decision in *SWANCC* did not alter the parties' reliance on *Hoffman Homes I* that the EPA could not regulate isolated intrastate wetlands. Therefore, the subsequent release of the *SWANCC* decision does not justify vacating the Consent Decree. The *SWANCC* decision does not establish that the Government exceeded its authority in entering into the Consent Decree, so Krilich's claim that the Decree was void *ab initio* fails as well. For these and the foregoing reasons, we AFFIRM.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*