DIAGRAM 3

Robert BRACE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 98–897 L.

United States Court of Federal Claims.

Feb. 11, 2002.

Henry Ingram, Resource Law Partners, Pittsburgh, PA, for plaintiff.

Susan V. Cook, United States Department of Justice, Washington, DC, for defendant, with whom were Acting Assistant Attorney General John C. Cruden, Trial Attorney Julia K. Evans, and of counsel Pamela Lazos and Janet Williams, United States Environmental Protection Agency, Region III.

## ORDER

MOODY R. TIDWELL, III, Senior Judge.

This takings case is before the court on defendant's second motion for summary judgment. For the reasons explained below, defendant's motion is denied.

## BACKGROUND

Plaintiff, a property owner, filed a complaint alleging that the government effectively took his property without just compensation when plaintiff was ordered to cease maintenance and operation of a drainage system on his property and to restore portions of property to a prior condition which would exhibit wetland characteristics. Plaintiff contends that the government action has interfered with his reasonable, investment-backed expectations he had when he acquired the property in 1975, since jurisdiction under the Clean Water Act had not been extended until 1977. Plaintiff further contends that his property has been severely impaired.

The court previously denied a motion for summary judgment from defendant. See Brace v. United States, 48 Fed.Cl. 272 (2000). Since the time of that ruling, the parties have stipulated that the relevant parcel for the purpose of an economic analysis is the Murphy Farm property, a parcel of approximately 60 acres which contains the 30 acre wetland site, though the precise acreage of the parcel as a whole remains in dispute. The court refers to the above mentioned decision, Brace v. United States, 48 Fed.Cl. 272 (2000), for a more thorough recitation of the court's previous findings of facts in this matter.

## DISCUSSION

### I. Standard of Review

The instant matter comes before the court on the defendant's second motion for summary judgment. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See rule 56(c) of the Rules of the Court of Federal Claims (RCFC); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of establishing the absence of any disputes of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party has met its burden of showing entitlement to judgment as a matter of law, the burden then shifts to the non-moving party to provide facts establishing that a genuine issue for trial exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The non-moving party cannot discharge its burden by cryptic, conclusory, or generalized responses but, instead, must produce some evidence showing a dispute of material fact." Fort Myer Constr. Corp. v. United States, 42 Fed.Cl. 720, 724 (1999), see also Banner v. United States, 44 Fed.Cl. 568, 574 (1999). A material fact is one that would change the outcome of the litigation. See Anderson, 477 U.S. at 248, 106 S.Ct. 2505. Facts which are not outcome determinative are not material, and disputes over such facts will not preclude the court from granting summary judgment.

*See id.* The Federal Circuit has characterized the nature of just compensation principles as being filled with facts, warning against "precipitous grants of summary judgment." *Yuba Goldfields, Inc. v. United States,* 723 F.2d 884, 887 (Fed.Cir.1983).

## II. Fifth Amendment Takings Analysis

■ In response to defendant's first motion for summary judgment, the court previously ruled that plaintiff failed to meet two of the three factors utilized in determining whether a regulatory taking has occurred. *Brace,* 48 Fed.Cl. at 278–79, 282–84. The three factors that the Supreme Court has set out in determining whether an action constitutes a regulatory taking are: (1) the character of the governmental action or regulation; (2) the economic impact of the regulation on the claimant; and (3) the extent to which the regulation has interfered with reasonable investment-backed expectations. *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *see also Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 224–25, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986); *Kaiser Aetna v. United States,* 444 U.S. 164, 175, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979). Since *Penn Central,* the Court has identified "two discrete categories of regulatory action as compensable without case-specific inquiry into the public interest advanced in support of the restraint." *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). The first type of regulatory action considered to be a categorical taking "encompasses regulations that compel the property owner to suffer a physical 'invasion' of his property." *Lucas,* 505 U.S. at 1015, 112 S.Ct. 2886. The second type of regulatory action "is where regulation denies all economically beneficial or productive use of the land." *Id.* at 1015, 112 S.Ct. 2886. The Court characterized the second category of regulatory action, where the regulation denies the owner all economic and beneficial use of land, as "extraordinary" and "relatively rare". *Id.* at 1017–18, 112 S.Ct. 2886. The Court of Appeals for the Federal Circuit has noted that "[s]ince *Lucas,* it has consistently been the law of [the Court of Appeals for the Federal Circuit] that the

standard three-part *Penn Central* regulatory takings analysis is proper in all non-categorical, or partial takings cases." *Palm Beach Isles Assocs. v. United States,* 231 F.3d 1365, 1367 (Fed.Cir.2000).

It is settled law that "the question of identifying a regulatory taking involves a 'weighing of private and public interests.'" *Florida Rock Indus., Inc. v. United States,* 791 F.2d 893, 904 (Fed.Cir.1986) (*quoting Agins v. City of Tiburon,* 447 U.S. 255, 261, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980)). Settled law also provides that "[e]ven though a regulatory taking analysis is normally ad hoc and fact-intensive, the United States may still be entitled to judgment as a matter of law." *767 Third Ave. Assocs. v. United States,* 48 F.3d 1575, 1580 (Fed.Cir.1995) (citing *Chang v. United States,* 859 F.2d 893, 898 (Fed.Cir. 1988)). Although some facts may result in controversy between the parties, "[s]ummary judgment is fully appropriate" in cases where facts material to the decision are not in dispute. *Avenal v. United States,* 100 F.3d 933, 936 (Fed.Cir.1996). The Supreme Court has implicitly recognized that the third *Penn Central* criterion, by itself, may be determinative over a takings claim. *See Good v. United States,* 39 Fed.Cl. 81, 95 (1997) ("[T]he Supreme Court resolved a regulatory takings claim solely under the reasonable-investment backed expectation factor of the *Penn Central* test ... to find no takings liability.") (citing *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1005, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)).

The court ruled on the first and third criterion set forth in *Penn Central,* finding that under either factor the government's action did not constitute a taking. *Brace,* 48 Fed.Cl. at 278–79, 282–84. Additionally, the court also found insufficient information to rule on the second criterion. *Id.* at 279–82. As a result of this dearth of information, the court denied defendant's motion to dismiss at that time and ordered the parties to provide additional information to the court. *Id.* at 284. In the instant case, the court has already found no taking to have occurred under the third prong of the *Penn Central* test. *Id.* at 282–84. Thus, should plaintiff be found to have suffered a significant economic

impact as a result of the regulation, the court's earlier finding that plaintiff did not have reasonable investment-backed expectations linked to the 30 acre wetlands prior to purchase might have been sufficient to support allowing defendant's motion for summary judgment, under other circumstances. *See 767 Third Ave. Assocs.*, 48 F.3d at 1581 (stating: "[W]e conclude that [plaintiff] could not have had a reasonable expectation of non-interference from the United States government. That being so clearly the case, the other [*Penn Central*] factors need not be considered."). The absence of a factual record combined with recent developments in takings jurisprudence, however, does not support allowing defendant's motion for summary judgment.

■ The gravamen of plaintiff's argument opposing defendant's second motion for summary judgment revolves around the narrower scope of the Clean Water Act (CWA), 86 Stat. 884 (amended by 33 U.S.C. § 1344(a), Section 404(a)), as provided by the Supreme Court in *Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers*, 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001). In *Solid Waste Agency of Northern Cook County*, the Solid Waste Agency of Northern Cook County (SWANCC), a consortium of 23 Chicago cities and villages united in locating and developing a disposal site for baled nonhazardous solid waste, decided to purchase an abandoned gravel and sand pit in Northern Illinois, which over time had filled with water and had become a habitat for migratory birds. *Id.* at 678, 121 S.Ct. 675. SWANCC purchased the site and filed for permits from the Army Corps of Engineers as some of the seasonal and permanent ponds where the migratory birds lived needed to be filled. *Id.* The Army Corps of Engineers interpreted Section 404(a) as granting them regulatory authority over the site and denied SWANCC's request for a permit. *Id.* at 678–79, 121 S.Ct. 675. SWANCC challenged the Army Corps of Engineers' decision under the Administrative Procedure Act, 5 U.S.C. § 701, in the Northern District of Illinois, then appealed to the Seventh Circuit when the district court ruled in favor of the Army Corps of Engineers. *Id.* The Seventh Circuit

also found for the Army Corps of Engineers, and on appeal from that decision, the Supreme Court granted certiorari and then reversed the Seventh Circuit's ruling. *Id.* at 679–80, 121 S.Ct. 675.

The Supreme Court distinguished SWANCC's case from the facts in *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985), where it held that the Corps had § 404(a) jurisdiction over wetlands adjacent to a navigable waterway, by pointing out that there "was the significant nexus between the wetlands and 'navigable waters' that informed [their] reading of the CWA ... In order to rule for [the Army Corps of Engineers] here, [the Court] would have to hold that jurisdiction of the Corps extends to ponds that are *not* adjacent to open water." 121 S.Ct. at 680. The Court concluded "that the text of the statute will not allow this." *Id.* Therefore, the Court refused to hold "that isolated ponds, some only seasonal, wholly located within two Illinois counties, fall under § 404(a)'s definition of 'navigable waters' because they serve as habitat for migratory birds." *Id.* at 682. It noted that allowing the Corps "to claim federal jurisdiction over ponds and mudflats falling within the 'Migratory Bird Rule' would result in a significant impingement of the States' traditional and primary power over land and water use." *Id.* at 684.

The Supreme Court's decision in *Solid Waste Agency of Northern Cook County* (hereinafter *SWANCC*) has been closely followed. The Ninth Circuit, in *Headwaters, Inc. v. Talent Irrigation Dist.*, 243 F.3d 526 (9th Cir.2001), distinguished the facts of the case before it from those in *SWANCC* by noting that "[t]he irrigation canals in this case are not 'isolated waters' such as those that the Court concluded were outside the jurisdiction of the Clean Water Act. Because the canals receive water from natural streams and lakes, and divert water to streams and creeks, they are connected as tributaries to other 'waters of the United States.'" 243 F.3d at 533. The district court for the District of Montana mirrored the Ninth Circuit's reasoning in *United States v. Buday*, 138 F.Supp.2d 1282 (D.Mont.2001), noting that in the case before it, the site in question was a "tributary of a

tributary" of an interstate water. *See* 138 F.Supp.2d at 1288–89. The Environmental Protection Agency has recognized the change in interpretation of the CWA as well, in its initial decision *In re Otter*, 2001 WL 388944 (E.P.A. April 9, 2001). The EPA noted that "[t]he facts of the present case ... involve wetlands adjacent to open water and not the isolated ponds involved in the Solid Waste Agency case." 2001 WL 388944, n. 1. Most recently, the federal district court for Maryland refused to extend *SWANCC* in *United States v. Interstate General Co.*, 152 F.Supp.2d 843 (D.Md.2001). It noted that "[t]he *SWANCC* case is a narrow holding in that only 33 CFR § 328.3(a)(3), as applied to the Corps' creation of the Migratory Bird Rule, is invalid pursuant to a lack of congressional intent." 2001 WL 668164, at *3.

It is unclear from the factual record whether a nexus exists between the 30 acres in question and an interstate water. Should the facts indicate that the 30 acres are not connected to an interstate water in any manner, then the Supreme Court's ruling in *SWANCC* renders the issue of whether a taking occurred moot, as the Army Corps of Engineers no longer has authority to regulate isolated ponds and wetlands not connected to interstate commerce. This lack of authority for the Corps would mean that plaintiff is free to utilize the totality of his property for planting crops. Furthermore, the size of the parcel as a whole remains in dispute. This factual dispute is relevant in establishing what the "parcel as a whole" is for purposes of analysis under the second *Penn Central* prong. This court has noted that "[t]he economic analysis ... is often expressed in the form of a fraction, the numerator of which is the value of the subject property encumbered by regulation and the denominator of which is the value of the same property not so encumbered." *Walcek v. United States*, 49 Fed.Cl. 248, 258 (2001). It is clear that "in order to derive this fraction, the court must first define the subject property to be valued." *Id.* at 258. The paucity of information, relevant to the analysis under the second *Penn Central* prong and establishing whether the Army Corps of Engineers has jurisdiction over the 30 acres, does not allow the court to grant defendant's motion for summary judgment.

If, *arguendo*, there were sufficient information in the record, the court could only grant defendant's motion for summary judgment if the evidence indicated that the wetlands on plaintiff's property were connected to an interstate water. The Supreme Court's decision in *SWANCC* clearly shows that the Army Corps of Engineers lacks jurisdiction over plaintiff's land under the CWA if no nexus exists between the wetlands on plaintiff's land and an interstate channel. In such a case plaintiff would be free to use his land as he originally intended, as no legal taking occurred. Only if the evidence indicated that the wetlands on plaintiff's property were connected to an interstate water, might the court be able to allow defendant's motion for summary judgment. Furthermore, if the evidence indicated that no nexus existed between the wetlands and an interstate channel, defendant's motion for summary judgment could not be granted as the court would have to determine whether the plaintiff is entitled to compensation for the costs involved in converting the relevant acreage back into wetlands under the original consent decree.

## CONCLUSION

The court hereby *DENIES* defendant's motion for summary judgment. In light of the current circumstances, the court requires a second joint status report to be filed by the parties within 45 days. In this report, the parties are to provide the court with precise information regarding the size of the parcel as a whole, and location of the parcel in relationship to any ditch, canal, or channel that could lead to an interstate water. Furthermore, the parties will provide the court with evidence of the costs the plaintiff incurred in complying with the consent decree. The court strongly suggests that the parties explore settling this matter after gathering the information and provide this court with the status of such negotiations, if any, in the second joint status report.

**IT IS SO ORDERED.**