BACCARAT FREMONT
DEVELOPERS,
Plaintiff,

v.

U.S. ARMY CORPS OF ENGINEERS,
et al., Defendants.

No. C 02–3317 CW.

United States District Court,
N.D. California.

Aug. 11, 2003.

David H. Blackwell, Robert R. Moore, Allen Matkins Leck Gamble & Mallory LLP, San Francisco, CA, for Baccarat Fremont Developers, LLC, Plaintiff.

Azar Bolandgray, Deputy Attorney General, Oakland, CA, for San Francisco Regional Water Quality Control Board, State Water Resources Control Board, Celeste Cantu, Loretta K. Barsamian, Defendants.

James A. Coda, Office of the U.S. Attorney, San Francisco, CA, Jack M. Kerns, U.S. Army Corps of Engineers, Assist. Dist. Counsel, San Francisco, CA, Thomas H. Pacheo, Mark A. Rigau, Thomas S. Sansonetti, U.S. Dept. of Justice, Environmental & Natural Resources Div., San Francisco, CA, David W. Shapiro, Boies, Schiller & Flexner, LLP, Oakland, CA, for San Francisco District of U.S. Army Corps of Engineers, U.S. Army Corps of Engineers, Timothy S. O'Rourke, Defendants.

Allison D. Daniels, Erickson, Beasley, Hewitt & Wilson, Oakland, for City of Fremont, Defendant.

Jack M. Kerns, U.S. Army Corps of Engineers, Assistant District Counsel, San Francisco, for San Francisco District of U.S. Army Corps of Engineers, U.S. Army Corps of Engineers, Timothy S. O'Rourke, Defendants.

## ORDER GRANTING FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WILKEN, District Judge.

Defendants United States Army Corps of Engineers and Lt. Col. Timothy O'Rourke (Federal Defendants) move for summary judgment. Plaintiff Baccarat Fremont Developers (Baccarat) opposes this motion. The matter was heard on March 14, 2003. Having considered all of the papers filed by the parties and oral argument on the motion, the Court GRANTS Federal Defendants' motion.

### BACKGROUND [1]

Baccarat is a California company and the developer of the Fremont–Cushing Plaza Project, located on 30.98–acre site in Fremont, California. The United States Army Corps of Engineers (the Corps) is a federal agency having jurisdiction to regulate certain activities in navigable waters of the United States under the Clean Water Act. Lt. Col. Timothy O'Rourke is the District Engineer for the San Francisco District of the Corps. Baccarat contests Defendants' assertion of regulatory jurisdiction over seasonal wetlands located on the Fremont–Cushing Plaza Project site.

The Fremont–Cushing Plaza Project site is roughly rectangular. It is bounded on the north by Cushing Parkway, on the east by Fremont Boulevard, and on the south and west by property owned by the Alameda County Flood Control District (ACFCD). Berms located on the ACFCD property separate the wetlands from a flood control channel operated by the ACFCD. A maintenance road sits atop the berms. The berms and road abut the western and southern boundaries of the wetlands.

---

1. Except where noted that an issue of fact is disputed, or that one party makes certain allegations or contentions, the facts below are undisputed.

The project site contains approximately 7.66 acres of seasonal wetlands in six delineated sites identified as 1a, 2a, 3, 4, 5a and 6a in Federal Defendants' Wetland Delineation Map. Wetlands 1a, 3, 6a and 7a are located at the south and west edges of the site. Wetlands 2a and 5a are located near the center of the site. Wetland 4, a 0.48–acre site, receives restricted tidal flow through a culvert from an ACFCD culvert. Baccarat does not contest the Corps' assertion of jurisdiction over wetland 4 under 33 U.S.C. § 403. Wetlands 1a, 2a, 3, 5a and 6a will be referred to hereafter as the "contested wetlands."

The administrative record includes "site notes," dated April 17, 2001, prepared by Philip Shannin, a project manager with the regulatory division of the Corps. These notes state that "if not for [the berms] ... wetlands [1a, 3, 6a and 7a] would directly connect to the [tidal flood control] channels." The notes further state that because of a hard clay layer in the site's soil, "water seepage from ... wetlands [2a and 5a] is very slow." According to the notes, "given the shallow depth of these wetlands [2a and 5a] and the hardness of the soil, water collected in these wetlands in storm events would flow out of these wetlands." The notes conclude that because the elevation of the site decreases as one approaches the flood control channels, "it seems likely that the water in these wetlands [2a and 5a] would flow into the tidal flood control channels, if not for the manmade berms." Baccarat emphasizes that, according to the administrative record, water from the wetlands does not flow into the channels because of the berms.

In February, 1998, Baccarat sought, pursuant to § 404 of the CWA, a permit from the Corps to discharge fill material in approximately 2.36 acres of the wetlands as part of its plans to construct commercial buildings on the project site. Under Section 401 of the Clean Water Act, an applicant for a Section 404 permit must first obtain a certification from a State agency attesting that any such discharge will comply with the Clean Water Act. 33 U.S.C. § 1341(a)(1). In June, 2001, Defendant San Francisco Regional Water . Quality Control Board (Regional Board) issued to Baccarat a Conditional Water Quality Certification and Waiver of Discharge Requirements. In January, 2002, the Regional Board imposed certain conditions on the certification. One of the conditions, referred to as the "Mitigation Condition," requires that Baccarat create on-site a minimum of 2.36 acres of seasonal freshwater wetlands and enhance the remaining 5.3 acres of existing brackish wetlands within twelve months of the commencement of stockpiling fill on the site. On March 1, 2002, the Corps countersigned the permit, thereby making the permit effective. The permit requires that Baccarat satisfy the Mitigation Condition.

On June 26, 2002, Baccarat brought an action in State superior court, seeking declaratory and injunctive relief.[2] On July 10, 2002, Federal Defendants removed the entire State court action to this Court

---

2. Baccarat previously challenged the Army Corps' jurisdiction over the wetlands through an administrative process. In January, 2001, Baccarat asked the Army Corps to reconsider its determination that it had jurisdiction, in light of *Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers*, 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001). In May, 2001, the Army Corps denied Baccarat's request. Baccarat appealed the decision. In October, 2001, the South Pacific Division of the Army Corps concluded that the jurisdictional determination was not supported by substantial evidence in the administrative record and remanded the matter to the San Francisco District of the Army Corps. In January, 2002, the Army Corps reaffirmed its initial jurisdictional determination.

pursuant to 28 U.S.C. §§ 1441, 1442(a)(1) and 1442a. The claims against Defendants State Water Resources Control Board; Celeste Cantu, Executive Officer of the State Board; San Francisco Regional Water Quality Control Board; Loretta K. Barsamian, Executive Officer of the Regional Board; and City of Fremont were dismissed or remanded to State court by this Court's October 16, 2002 order.

In its remaining causes of action, Baccarat seeks a judicial declaration that the Corps does not have jurisdiction to regulate the disputed wetlands and seeks to enjoin Lt. Col. O'Rourke from enforcing the Mitigation Condition based on this alleged lack of jurisdiction. On January 10, 2003, Federal Defendants filed their motion for summary judgment on these remaining causes of action.

## DISCUSSION

### I. Legal Standard

#### A. Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir.1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Eisenberg*, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim. *Id.*; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991), *cert. denied*, 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan*, 929 F.2d at 1409. A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

#### B. APA Standard of Review

Challenges to final agency actions are subject to the review provisions of the Administrative Procedures Act

(APA). *See, e.g., Southwest Center for Biological Diversity v. Bureau of Reclamation,* 143 F.3d 515, 522 (9th Cir.1998). The Corps' assertion of regulatory jurisdiction over the wetlands is a final agency action subject to review under the APA.

■ Under the APA, agency decisions may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Ariz. Cattle Growers' Ass'n v. United States Fish & Wildlife Serv.,* 273 F.3d 1229, 1236 (9th Cir.2001).[3] To determine whether an agency action was arbitrary and capricious, the court must "determine whether the agency articulated a rational connection between the facts found and the choice made." *Ariz. Cattle Growers' Ass'n,* 273 F.3d at 1236.

■ "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *see also Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985); *Southwest Center for Biological Diversity v. United States Forest Service,* 100 F.3d 1443, 1450 (9th Cir.1996). The Ninth Circuit has held, "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Friends of the Earth v. Hintz,* 800 F.2d 822, 829 (9th Cir.1986); *Southwest Center,* 100 F.3d at 1450–51.

■ As long as the agency decision was based on a consideration of relevant factors and there is no clear error of judgment, the reviewing court may not overturn the agency's action. *See id.* (citing *Am. Hosp. Ass'n v. NLRB,* 499 U.S. 606, 111 S.Ct. 1539, 113 L.Ed.2d 675 (1991)). In particular, the reviewing court must defer to the agency's decision when the resolution of the dispute involves issues of fact or requires a high level of technical expertise. *See Marsh v. Or, Natural Res. Council,* 490 U.S. 360, 377, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989); *Cen. Ariz. Water Conservation Dist. v. EPA,* 990 F.2d 1531, 1539–40 (9th Cir.1993). Accordingly, the court may set aside only those conclusions that do not have a basis in fact, not those with which it disagrees. *See Ariz Cattle Growers' Ass'n,* 273 F.3d at 1236.

## C. Clean Water Act

The Clean Water Act provides that "any discharge of dredged or fill materials into 'navigable waters'—defined as the 'waters of the United States'—is forbidden unless authorized by a permit issued by the Corps of Engineers pursuant to § 404 [of the Clean Water Act, 33 U.S.C. § 1344]." *United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 123, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985) (also citing 33 U.S.C. §§ 1311, 1362). As defined in the governing regulations, "waters of the United States" include:

(a)(1) All waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; . . .

---

**3.** Baccarat cites the decision of the Honorable Charles A. Legge of this Court in *Leslie Salt Co. v. United States,* 660 F.Supp. 183, 185 (N.D.Cal.1987) to argue that a *de novo* standard of review should apply in this Court's examination of the Corps' assertion of jurisdiction. However, as Federal Defendants point out, Judge Legge ultimately determined that an arbitrary and capricious standard should apply in reviewing the Corps' assertion of jurisdiction. *See Leslie Salt Co. v. United States,* 789 F.Supp. 1030, 1033 (N.D.Cal.1991).

(5) Tributaries of waters identified in paragraphs(a)(1) through (4) of this section; ...

(7) Wetlands adjacent to waters (other than waters that are themselves wetlands) identified in paragraphs (a)(1) through (6) of this section.

33 C.F.R. §§ 328.3(a)(1), (5) and (7). The regulations further state:

The term "adjacent" means bordering, contiguous, or neighboring. Wetlands separated from other waters of the United States by man-made dikes or barriers, natural river berms, beach dunes and the like are "adjacent wetlands."

*Id.* at § 328.3(c).

## II. Federal Defendants' Motion

■ It is undisputed that the flood control channels to the west and south of the site are waters of the United States subject to Clean Water Act § 404 jurisdiction. According to the Shannin notes contained in administrative record, wetlands 1a, 3, 6a and 7a would directly connect to the channels but for the berms. The Shannin notes further state that storm water from wetlands 2a and 5a would also flow down hill across the site and into the channels, if not for the berms. The Court concludes that the contested wetlands are separated from the channels by the berms, which are man-made barriers, and the contested wetlands are therefore "adjacent wetlands," under the meaning of 33 C.F.R. § 328.3(c), over which the Corps has regulatory jurisdiction. The facts of this case are analogous to those in *Headwaters, Inc. v. Talent Irrigation Dist.*, 243 F.3d 526 (9th Cir. 2001), in which the Ninth Circuit concluded that canals that were separated from navigable waters by closed waste gates were nevertheless subject to § 404 jurisdiction.[4]

■ Baccarat argues that the contested wetlands are not subject to the Corps' jurisdiction because there is no hydrological or ecological connection between these wetlands and navigable waters. Baccarat's argument is based on an erroneous legal standard. The Corps' regulatory jurisdiction over adjacent wetlands under the Clean Water Act does not depend on the existence of an actual hydrological or ecological connection between the wetland and navigable waters. The Supreme Court has rejected this position in upholding the Corps' adjacent wetlands regulation:

[I]t may well be that not every adjacent wetland is of great importance to the environment of adjoining bodies of water. But the existence of such cases does not seriously undermine the Corps' decision to define all adjacent wetlands as "waters." If it is reasonable for the Corps to conclude that in the majority of cases, adjacent wetlands have significant effects on water quality and the aquatic ecosystem, its definition can stand. That the definition may include some wetlands that are not significantly intertwined with the ecosystem of adjacent waterways is of little moment, for where it appears that a wetland covered by the Corps' definition is in fact lacking in importance to the aquatic environment—or where its importance is outweighed by other values—the Corps may always allow development of the wetland for other uses simply by issuing a permit.

*Riverside,* 474 U.S. at 135, n. 9, 106 S.Ct. 455. *See also Headwaters,* 243 F.3d at 533–34.

The Supreme Court's subsequent decision in *Solid Waste Agency of Northern*

---

**4.** The Ninth Circuit in *Headwaters* did not specifically address adjacency under 33 C.F.R. § 328.3(c).

*Cook County (SWANCC) v. United States Army Corps of Engineers,* 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001) did not alter this holding. As Federal Defendants point out, *SWANCC* addressed the application of a "migratory bird rule" to isolated "ponds," as defined under 33 C.F.R. § 328.3(a)(3), that were not adjacent to waters of the United States. The decision did not address wetlands adjacent to waters of the United States covered by § 328.3(a)(7). *See SWANCC,* 531 U.S. at 167, 121 S.Ct. 675 (noting "Congress' unequivocal acquiescence to, and approval of, the Corps' regulations interpreting the CWA to cover wetlands adjacent to navigable waters"); *Headwaters,* 243 F.3d at 533–34 (holding that the canals at issue were not "isolated waters" within the meaning of *SWANNC* ).

Baccarat cites several other post-*SWANNC* opinions that it contends hold that *SWANNC* overruled *Riverside* such that any wetland without an actual ecological or hydrological connection to a navigable water is not subject to § 404 jurisdiction. *See United States v. Lamplight Equestrian Center, Inc.,* 2002 WL 360652 (N.D.Ill.2002); *Brace v. United States,* 51 Fed. Cl. 649 (Fed.Cl.2002); *United States v. Krilich,* 152 F.Supp.2d 983 (N.D.Ill. 2001). However, none of these cases involves a wetland separated from navigable waters by a man-made barrier. *See Lamplight,* 2002 WL 360652 at *8–9 (involving wetland that was contiguous with navigable waters); *Brace,* 51 Fed.Cl. 649, 653 (noting "paucity of record" regarding adjacency); *United States v. Krilich,* 948 F.Supp. 719, 722 (N.D.Ill.1996) (involving a "bowl-shaped depression" that was agreed to be "not adjacent to any other surface water"). Therefore, none held that separation by a man-made barrier is sufficient to prevent a wetland from being subject to § 404 jurisdiction.

## CONCLUSION

Because the Court grants Federal Defendants' motion for summary judgment, the Court DENIES as moot Federal Defendants' motion to strike the declaration of Michael Josselyn (Docket No. 43).

For the foregoing reasons, Federal Defendants' motion (Docket No. 28) is GRANTED. Judgment shall enter accordingly. Federal Defendants shall recover their costs from Plaintiff.

IT IS SO ORDERED.